IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

SYBIL SMITH                                              PLAINTIFF

v.                                   CAUSE NO. 5:15-cv-55-DCB-MTP

CITY OF MCCOMB, MISSISSIPPI; ANTHONY
DANIELS, in His Individual Capacity and
in His Official Capacity as a Police Officer
for the City of McComb, Mississippi; KENYANNA
MARTIN, in Her Individual Capacity and in Her
Official Capacity as a Police Officer for the
City of McComb, Mississippi; ARMSTRONG NATIONAL
SECURITY FORCE, LLC; and ELDRIDGE BULLOCK, in
His Individual Capacity and in His Capacity as
an Employee and Agent for ARMSTRONG NATIONAL        DEFENDANTS
SECURITY FORCE, LLC

MEMORANDUM ORDER AND OPINION

This cause is before the Court on plaintiff Sybil Smith

("Smith")'s Motion for Partial Summary Judgment (**docket entry 81**)

and defendants Armstrong National Security Force, LLC

("Armstrong") and Eldridge Bullock ("Bullock")'s Cross-Motion for

Summary Judgment (**docket entry 95**). Having carefully considered

the motions, responses, and applicable law, and being otherwise

fully informed in the premises, the Court finds as follows:

I. Facts & Procedural History

This case arises from a verbal dispute between plaintiff Sybil

Smith ("Smith") and her neighbor, Brittany Bullock, which occurred

on June 21, 2014, at the Community Park Apartments in McComb,

Mississippi. At the time of the altercation, defendant Armstrong

National Security Force, LLC ("Armstrong") was providing security

1

services for the apartment complex. Defendant Eldridge Bullock ("Bullock") was the Armstrong security guard on duty at the time of the event.

On the day of the incident, Smith, who lived in unit 24-F of the apartment complex, was sitting on her porch when she observed Tracy Bullock, also known as "Baby T," standing by apartment building 19. Doc. 95-1, p. 6. Smith felt inclined to contact law enforcement to inform them of Baby T's presence at the complex. Though the plaintiff has acknowledged that she was unaware of any pending charges against Baby T, it appears that Smith suspected that Baby T was involved in some drug related activity within the residential community. Id. at 28-31. Upon seeing Baby T, Smith left her porch and walked to the security guard shack where Bullock was stationed. Smith informed Bullock that she was going to call the police and asked him to "keep an eye" on Baby T. Police responded to the call, but it appears that Baby T evaded capture by running into a nearby apartment. Id. at 24.

Smith claims that she returned to her apartment porch after the police left the scene. Id. According to the plaintiff, Brittany Bullock ("Brittany") approached Smith's apartment building shortly thereafter with a group of people.[1] It appears that plaintiff's apartment building was perpendicular to Building 19 and that there

---

[1] Brittany Bullock is Baby T's sister, and both Brittany and Baby T are related to defendant Eldridge Bullock.

was a walkway located in-between the two buildings. Smith testified in her deposition that the group walked around the walkway until they were facing Building 24, where Smith was sitting upstairs.[2] Once Brittany arrived in front of Smith's building, the plaintiff claims that Brittany began pointing her finger and shouting in Smith's direction. According to Smith, Brittany stated, "My brother is going to keep going to jail as long as this b---- keep calling the MF police." Doc. 95-1, p. 33. Brittany continued to curse the plaintiff by calling her "b----" and threating to "whoop [her] so and so a--." Id. Smith testified that she responded to Brittany by declaring, "If you want to whoop my a--, come on up here and whoop my a--." Id. at 45. The two continued this loud back and forth exchange by debating whether they would meet upstairs or downstairs. See id. at 33.

Meanwhile, Bullock had approached the scene and was standing downstairs as Smith and Brittany shouted back and forth. Id. at 127. As Brittany started to climb the stairs to reach the plaintiff, Bullock grabbed her and attempted to defuse the situation. A number of neighbors had walked outside by this point, and Smith claims that she was explaining the ongoing events to her

_____

[2] There is some disagreement as to Smith's whereabouts when the altercation began. Smith maintains that she had returned to her apartment and was sitting on her porch at the time Brittany approached. Bullock, however, testified that Brittany approached Smith and Bullock as they were walking from Building 19 to Building 24 and that most of the name-calling took place during their walk and continued until Smith reached the flat platform between the two flights of stairs leading to her apartment. See Doc. 81-6, pp. 34-46.

neighbors when Bullock stated, "Didn't I tell you to shut up?" Id. According to Smith, Brittany continued "ranting and raving," and Bullock stated, "I'm calling the police on both of you, because I told both of you to shut up." Doc. 95-1, p. 45; Doc. 81-6, pp. 37-38. Bullock called the McComb Police Department, and Officers Anthony Daniels and Kenyanna Martin arrived at the scene.

Upon his arrival, Officer Daniels spoke with Bullock for a few minutes about the unfolding events. Officer Daniels testified that Smith was yelling from the top of her balcony and asking why she was being placed under citizen's arrest. Doc. 81-8, p. 21-22. Officer Daniels claims that he asked Smith to keep quiet while he was speaking with Bullock, but Smith continued. Id. During their conversation, Bullock told Officer Daniels that he wanted to place Smith and Brittany under citizen's arrest for disturbing the peace and using profane language. Doc. 81-8, pp. 22, 32. Officer Daniels then walked up the stairs, placed handcuffs on Smith, and advised her that she was being placed under Officer Daniels advised Smith that she was being placed under arrest for disturbing the peace. Id. at 22, 27; Doc. 95-1, p. 116. Once Officer Daniels and Smith made it downstairs to the sidewalk, Bullock also told Smith that she was under arrest. Id. at 38.

Officer Daniels then placed Smith in Officer Martin's patrol car, and Officer Martin transported her to the McComb Police Department. Id. at 34. A few hours later, Bullock went to the

police station and filled out a criminal affidavit charging Smith with disturbing the peace in violation of Miss. Code Ann. § 97-35-15. Docs. 81-6, p. 67-68; 95-2; 98-7; 85-1. Smith was ultimately found not guilty of the charge against her. Brittany was later arrested and convicted of the same offense.

On June 22, 2015, Smith filed suit against the City of McComb and Officers Anthony Daniels and Kenyanna Martin in their individual and official capacities (collectively, "Municipal Defendants"), and Eldridge Bullock and Armstrong National Security Force (collectively, "Security Defendants"). Smith's complaint alleges a number of claims under state and federal law arising from the incident: (1) unlawful arrest under state and federal law against all defendants; (2) assault and battery against Officers Daniels and Martin; (3) intentional infliction of emotional distress against Bullock; (4) negligent infliction of emotional distress against Bullock; and (5) negligence against the Security Defendants. All claims against the Municipal Defendants were dismissed on June 5, 2017, upon stipulation of the parties. See Order of Dismissal, Doc. 121. Smith's claims against the Security Defendants remain.

The plaintiff filed a Motion for Partial Summary Judgment on March 17, 2017, seeking summary judgment on the issue of liability as to her claims of unlawful arrest and negligence. See Doc. 81. The Security Defendants subsequently filed their response to

Smith's motion, followed by a cross-motion for summary judgment as to all claims asserted against them. <u>See</u> Docs. 93, 95.

## II. <u>Discussion</u>

### A. *Standard of Review*

Summary judgment is appropriate "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. <u>LeMaire v. Louisiana Dept. of Transp. & Dev</u>., 480 F.3d 383, 387 (5th Cir. 2007). In determining whether a genuine dispute as to any material fact exists, the Court considers all of the evidence in the record but refrains from making credibility determinations or weighing the evidence. <u>Flock v. Scripto-Tokai Corp</u>., 319 F.3d 231, 236 (5th Cir. 2003).

"On cross-motions for summary judgment, [the Court] consider[s] 'each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" <u>Aldous v. Darwin Nat'l Assurance Co</u>., 851 F.3d 473, 477 (5th Cir. 2017). The party moving for summary judgment bears the initial burden of producing evidence that shows the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the movant makes such a demonstration, the nonmoving party must go beyond the pleadings

and "designate specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); but see LeBlanc v. Greater Baton Rouge Port Com'n, 676 F. Supp. 2d 460, 478 n.59 (M.D. La. 2009) ("summary judgment is improper if undisputed facts raise conflicting inferences because the choice between conflicting inferences is for the trier of fact").

### B. Unlawful Arrest under Federal Law

In their respective motions, both parties claim they are entitled to summary judgment as to Smith's unlawful arrest claims against the Security Defendants. The defendants contend that neither of the Security Defendants can be liable for unlawful arrest because Smith's arrest was effected exclusively by Officer Daniels, not Bullock. The plaintiff, however, argues that Bullock conspired, or acted in concert with, the McComb police officers to arrest Smith without warrant or probable cause.

Title 42 U.S.C. § 1983 provides a vehicle by which plaintiffs may recover against any person "who deprives an individual of federally guaranteed rights 'under color' of state law." Filarsky v. Delia, 566 U.S. 377, 383 (2012). "An individual's right to be free from unlawful arrest is such a protected right, the violation

of which may be grounds for a suit under § 1983." Duriso v. K-Mart No. 4195, Division of S.S. Kresge Co., 559 F.2d 1274, 1277 (5th Cir. 1977). To recover for a constitutional violation under § 1983, the plaintiff must establish: (1) that "the defendant has deprived her of a right secured by the 'Constitution and laws' of the United States" and (2) that the defendant acted under the color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). While "[a]nyone whose conduct is fairly attributable to the state can be sued as a state actor under § 1983," private conduct is excluded from the statute's reach. Blankenship v. Buenger, 653 F. App'x 330, 335 (5th Cir. 2016) (internal quotations omitted). However, private actors, like the Security Defendants, may be held liable under § 1983 if they are "willful participant[s] in joint activity with the State or its agents." Adickes, 398 U.S. at 152; see also Glotfelty v. Karas, 512 F. App'x 409, 414 (5th Cir. 2013) ("a private citizen may be held liable under § 1983 where the plaintiff alleges 'that the citizen conspired with or acted in concert with state actors'").

Under the joint action test, a private actor does not become liable under § 1983 by merely furnishing information to police, nor does an officer's partial reliance on the information given by a private party transform that party into a state actor. Daniel v. Ferguson, 839 F.2d 1124, 1131 (5th Cir. 1988); see also Sims, 778 F.2d at 1079 ("execution by private party of sworn complaint

forming the basis of arrest, without more, is insufficient"). To sustain a claim for unlawful arrest against a private actor under § 1983 on the basis of joint action with the state or state officials, "the plaintiff must show that the police in effecting the arrest acted in accordance with a 'preconceived plan' to arrest a person merely because he was designated for arrest by the private party, without independent investigation." <u>Sims v. Jefferson Downs Racing Ass'n, Inc</u>., 778 F.2d 1068, 1079 (5th Cir. 1985). When considering whether private merchants may be liable as state actors under a theory of joint action, the Fifth Circuit has emphasized that a private party will not be subject to § 1983 liability "unless an officer has failed to perform [an] independent investigation," which may include "such indicators as an officer's interview of an employee, independent observation of a suspect, and the officer writing his own report." <u>Morris v. Dillard Dept. Stores, Inc</u>., 277 F.3d 743, 750 (5th Cir. 2001); <u>see</u> <u>Smith v. Brookshire Bros</u>., 594 F.2d 140 (5th Cir. 1979) (finding state action where private merchant detained shoplifter pursuant to preconceived plan between the city and merchant); <u>Duriso v. K-Mart No. 4195, Division of S.S. Kresge Co</u>., 559 F.2d 1274, 1278 (5th Cir. 1977) (finding evidence sufficient for jury to infer that customary plan existed between store and police regarding shoplifter); <u>but</u> <u>see</u> <u>Barkley v. Dillard Dept. Stores, Inc</u>., 227 F. App'x 406, 410 (5th Cir. 2008) (finding no state action where

officer's decision to arrest was not based solely on private party's report); <u>Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc</u>., 673 F. 2d 771 (5th Cir. 1982) (finding no state action despite police officer's reliance on store's report where the officer made his own determination of cause to arrest).

Here, Bullock requested police assistance after witnessing the verbal altercation between Smith and Brittany. After the officers arrived at the scene, Officer Daniels spoke with Bullock for two to three minutes, and Bullock told Officer Daniels that he wanted to place both women under citizen's arrest. Officer Daniels subsequently handcuffed the plaintiff and advised her that she was being placed under citizen's arrest for disturbing the peace. Doc. 81-8, pp. 25-30. Officer Daniels arrived after the cursing between Smith and Brittany had subsided, but he witnessed Smith yelling downstairs in such a manner that made it difficult for him to hear Bullock, who was standing a mere two to three feet away. Doc. 81-8, p. 24-26, 50. In his deposition, Officer Daniels testified about a city policy which allowed security guards, or others effecting a citizen arrest, to travel to the police station after the arrest in order to fill out a criminal affidavit, and the officer stated that he was acting pursuant to that policy when he arrested Smith. But Officer Daniels also testified that he believed there was probable cause to arrest Smith based on his personal observations at the scene because he heard her "yelling

[and] talking loud in the presence of two or more folks," which he understood to constitute disturbing the peace. See Doc. 81-8, pp. 39-47, 51, 53.

While these facts show that Bullock requested that an arrest be made, Officer Daniels' uncontroverted testimony also shows that he independently assessed the situation prior to making the arrest by speaking to Bullock and observing Smith's conduct. Indeed, the officer testified that he believed he had probable cause to arrest Smith for disturbing the peace based on what he personally observed at the scene. Regardless of whether the officer also relied on the request or information provided by Bullock, Officer Daniels' partial reliance on that information is insufficient to transform Bullock into a state actor for purposes of § 1983. See Daniel, 839 F.2d at 1131. Moreover, there is no evidence showing an agreement or conspiracy between Bullock and Officer Daniels, nor has the plaintiff identified any evidence sufficient to raise a genuine issue of material fact as to a customary, preconceived plan between Armstrong Security and the McComb Police Department.[3]  As such,

---

[3] To the contrary, Smith testified that she has no knowledge about what Bullock told Officer Daniels during their conversation. Doc. 81-5, pp. 98-99, 114. Moreover, the arrest procedures outlined in the McComb Police Department's Policy Number 4.8, attached as Exhibit 4 to Smith's summary judgment motion, support that the department's officers are authorized to make warrantless arrests only when "a misdemeanor offense has been committed in their presence . . . or [they] have probable cause to believe a suspect has committed a criminal offense." Doc. 81-4, p. 8.  Armstrong Security's internal citizen arrest policy, attached to plaintiff's motion as Exhibit 10, also advises that police officers are not required to take arrested persons into custody if they have reasonable cause to believe the individual did not commit the offense, or that the arrest was otherwise unauthorized. Doc. 81-10, p. 15.

the Court cannot conclude that the Security Defendants are state actors for the purpose of § 1983 liability. The Security Defendants are therefore entitled to summary judgment on the plaintiff's unlawful arrest claims arising under federal law.

### C. State Law Claims[4]

### 1. False Arrest

The Security Defendants argue that Smith's state law unlawful arrest claim also fails as a matter of law because Bullock did not physically detain, seize, or arrest the plaintiff. Smith, on the other hand, contends that she is entitled to summary judgment because Bullock instigated or caused her arrest, and he did so without probable cause. While the facts support that Bullock did not touch or physically restrain Smith, these facts are not necessarily dispositive of the false arrest claim. See Watson ex rel. Watson v. Jones Cty. Sch. Dist. ex rel. Jones Cty. Sch. Bd. of Educ., 2008 WL 4279602, at *4 (S.D. Miss. Sept. 11, 2008).

Under Mississippi law, false arrest is an intentional tort which occurs "when one causes another to be arrested falsely, unlawfully, maliciously, and without probable cause." Croft v. Grand Casino Tunica, Inc., 910 So.2d 66, 75 (Miss. Ct. App. 2005).

---

[4] Considering the current procedural posture of this case, the length of time the matter has been pending, and all other factors articulated in 28 U.S.C. § 1367(c), the Court shall exercise its discretion to retain supplemental jurisdiction over Smith's remaining state law claims in the interest of "judicial economy, fairness, convenience, and comity." Smith v. Amedisys Inc., 298 F.3d 434, 447 (5th Cir. 2002).

The elements of a false arrest or imprisonment claim are: "(1) the detention of the plaintiff, and (2) the unlawfulness of such detention."[5] Gatheright v. Clark, 2016 WL 237153, at *3 (S.D. Miss. Jan. 20, 2016) (citing Hart v. Walker, 720 F.2d 1436, 1439 (5th Cir. 1983)). For a person to be liable to another for false imprisonment through false arrest, that person "must have personally and actively participated therein directly or by indirect procurement." Smith v. Patterson, 58 So. 2d 64, 66 (Miss. 1952); see also Sunshine Jr. Food Stores, Inc. v. Aultman By and Through Aultman, 546 So.2d 659, 663 (Miss. 1989) ("one who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment"); Rodriguez v. Ritchey, 539 F.2d 394 (5th Cir. 1976) ("general principles of tort law provide a cause of action for unlawful arrest against a defendant who 'affirmatively instigated, encouraged, incited, or caused the unlawful arrest'"). Instigation requires more than supplying information to the police and leaving to the police officers the decision to arrest. Id. The relevant inquiry is whether the defendant's actions "were the equivalent, in words or conduct, of stating, "Officer, arrest that

---

[5] "Because the elements of false arrest and false imprisonment are essentially identical, the distinction is inconsequential." Hobson v. Dolgencorp, LLC, 142 F. Supp. 3d 487, 494 (S.D. Miss. 2015) (citing Hart v. Walker, 720 F.2d 1436, 1439 (5th Cir. 1983)); see also Scott v. Spencer Gifts, LLC, 2015 WL 4205242, at *5 n.3 (S.D. Miss. July 10, 2015) (applying same analysis to plaintiff's false arrest and false imprisonment claims).

[woman]!'" <u>Godines, by and through Godines v. First Guar. Sav. &</u> <u>Loan Ass'n</u>, 525 So. 2d 1321, 1324 (Miss. 1988) (citing <u>Howell v.</u> <u>Viener</u>, 176 So. 731 (Miss. 1937)). What constitutes instigation depends on the facts and inferences to be drawn in each particular case. <u>Godines</u>, 525 So. 2d at 1325.

The evidence before the Court establishes that Bullock requested police presence at the scene, and after the officers arrived, Bullock told Officer Daniels that he wanted to place Smith under citizen's arrest for disturbing the peace. Yet, Officer Daniels also testified that he believed there was sufficient probable cause to arrest Smith based on his observations. Daniels then placed Smith in handcuffs and informed her that she was being placed under citizen's arrest, and Bullock later went to the police station to complete the affidavit charging the plaintiff. <u>See</u> Doc. 81-6, pp. 45, 48-49; Doc. 81-8, pp. 22, 24. Considering these facts, it is arguable that Bullock instigated or caused Smith's arrest.

Even assuming that Bullock instigated the arrest, Smith's unlawful arrest claim must fail if the arrest was supported by probable cause. <u>See</u> <u>Croft</u>, 910 So.2d at 75-76. "Probable cause requires a concurrence of an honest belief in the guilt of the person accused and reasonable grounds for such belief." <u>Watson</u>, 2008 WL 4279602 at *4; <u>see also</u> <u>Powe v. State</u>, 235 So. 2d 920, 923 (Miss. 1970) (defining probable cause as "less than evidence which

would justify condemnation ... but more than bare suspicion");
Benjamin v. Hooper Electronic Supply Co., Inc., 568 So. 2d 1182,
1190 (Miss. 1990) (noting that unfounded suspicion and conjecture
are improper bases for probable cause).[6] In moving for summary
judgment, the Security Defendants argue that if Bullock arrested
or caused Smith's arrest for disturbing the peace, he had probable
cause to do so based on her use of loud language and fighting words
in the presence of two or more people. Smith, however, responds
that summary judgment in her favor is warranted because Bullock
lacked probable cause based Smith's words and conduct.
Specifically, the plaintiff contends that no probable cause
existed because she was standing on her apartment porch at the
time of the altercation, and her language was not profane, or
otherwise sufficient to support a charge for disturbing the peace
by use of profane language.

Though the parties claim that many of the facts giving rise
to Smith's arrest are undisputed, the Court is reluctant to make
a finding as to probable cause at this stage. From the record,
there is some apparent disagreement about the nature of Smith's
charges and the particular facts and circumstances giving rise to
her arrest. Smith claims that Bullock directed her arrest because

---

[6] It is the function of the court to determine whether probable cause
existed when the facts are undisputed, but when facts are in dispute, [probable
cause] becomes question for the jury to determine based upon proper
instructions. Benjamin, 568 So. 2d at 1190.

she used profanity. Yet, testimony from Bullock and Officer Daniels suggests that the manner in which Smith engaged in the verbal exchange with Brittany, and her behavior following Officer Daniels' arrival on the scene, may have also provided a sufficient basis for the arrest. The criminal affidavit charging Smith cites Mississippi Code Annotated Section 97-35-15, which identifies a misdemeanor offense for disturbing the peace by, *inter alia*, the use of profane language or conduct calculated to lead to a breach of the peace. See Miss. Code Ann. § 97-35-15(1). But the affidavit also specifies that Smith disturbed the peace "by using profane language after being told to go inside." Doc. 81-7, p. 2. The deposition testimony of Bullock and Smith further highlights factual discrepancies regarding which words were uttered by Smith, the volume and manner in which they were uttered, and where the parties were located when the altercation occurred. See Doc.81-5, pp. 24-27, 33-34, 45-46, 76, 127-28; Doc. 81-6, pp. 34-50. From these facts, the Court concludes that reasonable minds could differ as to whether Bullock instigated Smith's arrest, and whether he had probable cause to do so based on her words and conduct at the scene. Resolving these competing inferences is an improper exercise at the summary judgment stage. Accordingly, both parties' motions on the false arrest claim shall be denied.

## 2. Intentional Infliction of Emotional Distress

Smith's motion for summary judgment does not extend to her emotional distress claims, but the Security Defendants assert that they are entitled to summary judgment on these claims as well. As to intentional infliction of emotional distress, the Security Defendants argue that Smith's claim fails as a matter of law because Bullock's conduct is insufficient to rise to the level of outrageous. Alternatively, the defendants contend that Smith has presented insufficient proof to raise any triable issue as to her injury or damages.

Plaintiffs asserting a claim for intentional infliction of emotional distress must show that: (1) the defendant acted willfully or wantonly towards the plaintiff by committing certain described actions; (2) the defendant's acts are ones which evoke outrage or revulsion in civilized society; (3) the acts were directed at or intended to cause harm to the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the defendant's acts; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant. Rainer v. Wal-Mart Associates, Inc., 119 So. 3d 398, 403 (Miss. Ct. App. 2013) (quoting J.R. ex rel. Malley, 62 So. 3d 902, 906-07 (Miss. 2011). "Meeting the requisite elements for intentional infliction of emotional distress is a tall order in Mississippi." Jenkins v. City of Grenada, 813 F. Supp. 443, 446 (N.D. Miss. 1993). The defendant's conduct must be "so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Perkins v. Wal-Mart Stores, Inc., 46 So. 3d 839, 848 (quoting Speed v. Scott, 787 So. 2d 626, 630 (Miss. 2001)). Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." Croft, 910 So. 2d at 75 (citing Raiola v. Chevron U.S.A., Inc., 872 So. 2d 79 (Miss. 2004)); but see Gamble ex rel. Gamble v. Dollar General Corp., 852 So.2d 5, 12 (Miss. 2003) (finding that defendant's "confrontational, physical, demeaning, and embarrassing" handling of shoplifting suspect created a jury issue as to plaintiff's intentional infliction of emotional distress claim).

Smith's intentional infliction of emotional distress claim is based entirely on Bullock's alleged involvement in arresting her without probable cause, and before criminal charges were filed. If there was probable cause to support Smith's arrest, then the plaintiff's claim for intentional infliction of emotional distress is also without merit. See Croft, 910 So. 2d at 75-76; Richard v. Supervalu, Inc., 974 So. 2d 944, 951 (Miss. Ct. App. 2008); see also Raiola v. Chevron USA, Inc., 872 So. 2d 79, 85-56 (Miss. Ct. App. 2004) ("liability for intentional infliction of emotional distress will not be imposed upon an actor for doing no more than exercising his legal rights"). For the same reasons the Court finds

a genuine issue of material fact as to probable cause, the Court also finds factual issues regarding the reasonableness of Bullock's conduct. See Harris v. Gaston, 2006 WL 763147 (N.D. Miss. Mar. 23, 2006) (denying summary judgment as to intentional infliction of emotional distress claim where a genuine issue of material fact existed as to whether it was reasonable for defendant to cause plaintiff's arrest). Furthermore, Smith has testified that she suffered from anxiety, depression, and agitation of a pre-existing shoulder problem following the incident, and she claims to have received treatment for these conditions.[7] Doc. 81-5, pp.68-75. Though the defendants quibble over whether the plaintiff's treatment records are sufficient to establish a claim for emotional distress damages, the Court finds that the record is sufficient to raise a triable issue as to the nature and foreseeability of Smith's injury. The defendants' summary judgment motion shall therefore be denied as to the intentional infliction of emotional distress claim.

### 3. Negligence

As with the false arrest claims, both parties contend they are entitled to summary judgment on Smith's negligence claims. The traditional elements of negligence under Mississippi law are: duty, breach, causation, and damages. Magnusen v. Pine Belt Inv.

---

[7] The record also contains two pages of the plaintiff's medical records, which indicate that she was prescribed certain medication. See Doc. 95-3.

Corp., 963 So. 2d 1279, 1282 (Miss. Ct. App. 2007); see also Anderson v. Litton Loan Servicing, LP, 2010 WL 445593, at *5 (S.D. Miss. Feb. 1, 2010) ("to survive summary judgment, a plaintiff must show a genuine issue regarding each of the four elements"). "[N]egligence is the result of the failure to perform a duty; therefore, actionable negligence cannot exist in the absence of a legal duty to an injured plaintiff." Stanley v. Morgan & Lindsey, Inc., 203 So. 2d 473, 476 (Miss. 1967). Whether a duty of care exists is a question of law to be decided by the court. Smith v. Miss. Sec. Police, Inc., 2010 WL 2723116, at *3 (S.D. Miss. July 6, 2010). The Security Defendants insist that summary judgment in their favor is proper because they owed no duty to Smith. Smith, however, argues that Bullock had a duty, pursuant to Armstrong's corporate policy, to avoid making a citizen's arrest unless it was necessary "for the protection of life and in a very limited amount of instances, for the protection of property...." Doc. 81-10, p. 14. Further, the plaintiff claims Bullock had a duty to file a misdemeanor criminal affidavit before effectuating her arrest.

Despite the plaintiff's contention that the Security Defendants were negligent for failing to comply with Armstrong's internal citizen arrest policy, the Court finds that Smith has failed to establish any legal duty owed to her by the defendants in this case. While internal corporate policies are relevant when considering the reasonableness of an employee's actions in a given

context, the Court is unconvinced that the existence of an internal policy creates a legal duty to the general public where none previously existed. See Keen v. Miller Environmental Grp., Inc., 702 F.3d 239, 248 (5th Cir. 2012) ("non-compliance with an internal policy is evidence that is probative of, but not dispositive of, breach of duty"); Crane Co. v. Kitzinger, 860 So. 2d 1196, 1200-01 (Miss. 2003) (holding that corporate manual and handbook were relevant to determine the reasonableness of an employee's actions).[8] To show the existence of a duty, Smith relies exclusively on Armstrong's General Order 6, an internal corporate policy written by Armstrong to its security personnel. See Doc. 81-10, p. 14. The stated purpose of Armstrong's General Order 6 is to "ensure that [Armstrong] personnel are familiar with Mississippi state laws related to arrest by civilians," and the policy describes the standard of conduct Armstrong security officers should follow "while performing their duties for [the] company." Doc. 81-10, p. 14. The text of the Order also states that Armstrong is "committed to providing a safe environment for [its] clientele," which is presumably Community Park Apartments in this case. Id. This internal policy was clearly intended to benefit

---

[8] See also Cox v. City of Ft. Worth, Tex., 762 F. Supp. 2d 926, 941 (N.D. Tex. 2010) ("a company's internal policies or procedures will not create a negligence duty where none otherwise exists"); Boutilier ex rel Boutilier v. Chrysler Ins. Co., 2001 WL 220159, at *1 (M.D. Fla. Jan. 31, 2001) ("mere fact that [defendant] had an internal corporate policy does not create a legal duty..."); Spearman v. Wyndham Vacation Resorts, Inc., 69 F. Supp. 3d 1273 (N.D. Ala. 2014) (noting that an internal policy intended for the company's benefit rather than safety to the public creates no cognizable duty).

Armstrong, its security officers, and the clients they serve. Nothing in the text of General Order 6 proclaims any obligation or duty to third parties, like Smith.

The Court observes that Mississippi courts have, under certain circumstances, recognized a duty owed by security officers to third party beneficiaries of security contracts entered between the private security firm and its clients. See Doe ex rel. Doe v. Wright Sec. Services, Inc., 950 So. 2d 1076, 1082 (Miss. Ct. App. 2007) (finding that security company owed duties to assaulted student arising from the security firm's contract with the student's school); Alqasim v. Capitol City Hotel Investors, LLC, 989 So.2d 488 (Miss. Ct. App. 2008) (holding that private security firm owed no duty to an injured hotel guest beyond the terms and condition of its security agreement with the hotel). However, the record in this case contains no evidence of a contract or agreement between Armstrong Security and Community Park Apartments, nor has Smith advanced any argument or authority proposing that the Security Defendants' duty arises from such an agreement.

Furthermore, Smith's argument that Bullock had some generalized duty to file a criminal affidavit prior to effecting her arrest is unpersuasive insofar as Mississippi law allows an officer or private citizen to arrest "any person without warrant for a misdemeanor offense which has been committed, or for a breach of the peace attempted or threatened in his presence." Miss. Code

Ann. § 99-3-7. Because the plaintiff has not articulated any duty owed to her by Bullock or Armstrong under the facts and circumstances of the case, summary judgment in the Security Defendants' favor is appropriate on the negligence claim.

### 4. Negligent Infliction of Emotional Distress

To maintain a claim for negligent infliction of emotional distress in Mississippi, plaintiffs must establish each of the elements of negligence by a preponderance of the evidence. Williams v. Lowe's Home Centers, Inc., 2007 WL 391567, at *4 (S.D. Miss. 2007) (citing Miss. Dep't of Transp. v. Cargile, 847 So. 2d 258, 262 (Miss. 2003)). Thus, in the absence of any actionable claim for negligence against the Security Defendants, Smith's negligent infliction of emotional distress claim must also fail. See Anderson, 2010 WL 445593, at *5. Having found that the plaintiff has failed to establish, or raise any genuine issue of material fact as to the element of duty, the Court finds that summary judgment in the defendant's favor is also warranted on the negligent infliction of emotional distress claim.

Accordingly,

IT IS HEREBY ORDERED AND ADJUDGED that plaintiff's Motion for Partial Summary Judgment on the Issue of Liability Alone (docket entry 81) is DENIED;

FURTHER ORDERED that the Security Defendants' Cross-Motion for Summary Judgment (docket entry 95) is GRANTED IN PART as to

the plaintiff's claims of unlawful arrest under federal law, negligence, and negligent infliction of emotional distress, and DENIED IN PART as to the plaintiff's claims of unlawful arrest under state law and intentional infliction of emotional distress.

SO ORDERED, this the 24th day of August, 2017.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE